STATE OF NEW JERSEY, PLAINTIFF, v.
ALLEN GERSON PERLMAN, DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)

Decided May 22, 1979.

*Mr. Barry Goas,* Deputy Attorney General, for the State (*Mr. John J. Degnan,* Attorney General, attorney).

*Mr. Howard Guggenheim* for defendant (*Messrs. Cooper, Perskie, Katzman, April, Niedelman & Wagenheim,* attorneys).

STEEDLE, J. S. C. Pursuant to *R.* 3:10–2, defendant Allen Gerson Perlman moves for the dismissal of three of the four counts of the state grand jury indictment filed and entered against him for allegedly having engaged in conduct in part violative of the Casino Control Act, *N. J. S. A.* 5:12–1 et seq. The issues raised by this motion are of first impression and their resolution is indeed of utmost import to the enforcement of the act's penal provisions.

Generally speaking, defendant is charged with four counts of swindling and cheating during his participation in the

game of blackjack at a single blackjack table at the Resort International Casino on or about June 17, 1978. More specifically, in the indictment it is alleged that defendant engaged in the following conduct during the course of a single calendar day: first, with the intent to win more than that to which he was entitled on the basis of his legal wager, by trick and sleight of hand performance defendant increased his wager on a round of blackjack after the first card of the round was dealt, and thereby unlawfully won $200 worth of chips; second, during another round of blackjack, with the same intent as described above and by means of a similar trick and sleight of hand performance, defendant unlawfully won $300 worth of chips; third, during a third round of blackjack, with the same intent as described in the first, and by means of a similar trick and sleight of hand performance, defendant unlawfully attempted to win $100 worth of chips; and fourth, with the intent to lose less than that which he would otherwise have lost on the basis of his legal wager, by trick and sleight of hand performance defendant decreased his wager on a round of blackjack after the first card of said round was dealt, and thereby unlawfully attempted to recapture $200 worth of chips wagered. Whether any or all of the above four transactions are violative of the law must first be determined. If more than one of the above transactions is found to be violative, this court must then address the more difficult and intriguing issue of whether, pursuant to the terms of the Casino Control Act, the transactions constitute one indictable offense or multiple indictable offenses. The court will deal with these issues separately.

I

While there is no serious contention that all four of the above transactions do not constitute criminal conduct, this court feels compelled to address the issue of whether the transactions do constitute such conduct in view of the fact that the resolution of this issue is germane to the disposition of defendant's motion.

The Casino Control Act makes unlawful the following conduct and authorizes the imposition of the following penalties in the event of a proven violation:

*Swindling and cheating; penalties*

Any person who by any trick or slight [*sic*] of hand performance, or by a fraud or fraudulent scheme, cards, dice or device, *wins* for himself or for another money or property or a representative of either in connection with casino gaming is guilty of a misdemeanor and subject to not more than three years imprisonment or a fine of $25,000.00 or both, and in the case of a person other than a natural person, to a fine of not more than $100,000.00. [*N. J. S. A.* 5:12–113; emphasis supplied]

On its face, the indictment filed and entered against defendant charges him with the commission of conduct some of which the above provision does not explicitly make criminal. Specifically, while the above provision proscribes, among other things the *winning* of a representative of money by engaging in certain conduct, the indictment charges in two counts that defendant unlawfully *won* a representative of money, in a third count that defendant unlawfully *attempted to win* same, and in a fourth count that defendant unlawfully *attempted to recapture* a representative of money he had wagered. The conduct alleged in the first two counts is undoubtedly violative of the act. Whether the conduct alleged in the third and fourth counts also constitutes criminal conduct is at issue.

Admittedly, *N. J. S. A.* 5:12–113 does not identify an attempt to unlawfully win a representative of money as criminal behavior. However, elsewhere it is statutorily provided that an attempt to commit an indictable offense is itself a misdemeanor, and thus also an indictable offense. *N. J. S. A.* 2A:85–5. This latter provision is generally applicable to attempts to commit all crimes and was not made inapplicable to criminal violations of the Casino Control Act. Consequently, the provision must be construed as rendering criminal an attempt to unlawfully win a representative of money, especially where the completed crime is aborted, not

by any change of heart on the part of a criminal defendant, but by mere misfortune.

Additionally, *N. J. S. A.* 5:12–113 does not explicitly identify the recapture of an amount wagered as criminal conduct, even if said recapture was achieved by a method which would render a winning unlawful, and moreover, the provision does not identify an attempted recapture as criminal conduct either. It is well-settled that there can be no conviction for an attempt to commit a crime if in fact the completed act would not constitute criminal behavior. *State v. Weleck,* 10 *N. J.* 355, 372 (1952). Accordingly, an attempted recapture, the conduct alleged in the fourth count, cannot be deemed criminal conduct under the terms of *N. J. S. A.* 2A:85–5 unless a completed recapture is also criminal pursuant to *N. J. S. A.* 5:12–113. Whether a completed recapture constitutes criminal conduct must be determined by an interpretation of the statutory term, "wins." The interpretation must serve to accord the term the connotation intended by the Legislature. *Pennsylvania Greyhound Lines, Inc. v. Rosenthal,* 14 *N. J.* 372, 382–83 (1954) ; *MacNeil v. Klein,* 141 *N. J. Super.* 394, 402 (App. Div. 1976). Legislative intendment may be ascertained by resort to the history of the Casino Control Act, or may be implied from the statutory language used or inferred on grounds of policy and reasonableness. *State v. Madden,* 61 *N. J.* 377, 389 (1972) ; *Harvey v. Board of Chosen Freeholders,* 30 *N. J.* 381, 391–92 (1959). Moreover, while this court is mindful that it is herein interpreting a penal statute which, as a matter of law, should be strictly construed, it recognizes that strict construction does not mandate disregard of legislative intent, nor does it require that such a provision should unnecessarily be rendered ambiguous or be accorded an unduly narrow interpretation supportive of an impractical or unreasonable result. *State v. Edwards,* 28 *N. J.* 292, 298 (1958) ; *State v. Quinones,* 140 *N. J. Super.* 237, 241 (App. Div. 1976) ; *State v. Tims,* 129 *N. J. Super.* 399, 401 (App. Div. 1974). The denotative meaning of the term "win" suggests that it

means more than to be successful or victorious in a competition conducted wholly in accordance with gaming rules or otherwise. Generally, the term means to gain or obtain by the use of effort. The New Webster Encyclopedic Dictionary of the English Language 959 (Thatcher ed. 1971). Moreover, while there is no explicit legislative commentary indicating how the statutory term "wins" should be interpreted, it could reasonably be assumed that the Legislature's purpose in enacting *N. J. S. A.* 5:12–113 is not only to make criminal success in competition achieved by the use of an illegal method and resulting in a monetary award, but mainly to deter certain swindling and cheating resulting in an economic windfall of any nature. When so interpreted, *N. J. S. A.* 5:12–113 renders the recapture of an amount wagered a criminal act if said recapture was achieved by proscribed method, and consequently, pursuant to *N. J. S. A.* 2A:85–5, an attempt to unlawfully recapture is likewise criminal behavior.

## II

The more difficult issue raised by defendant's motion is whether the four transactions in which defendant allegedly engaged and which were heretofore found violative of the law constitute four indictable offenses or only a single indictable offense for the reason that all of the alleged conduct was merged into one offense by operation of a continuing offense provision of the Casino Control Act, which, in pertinent part, explicitly provides as follows:

*Continuing offenses*
a. A violation of any of the provisions of this act shall be deemed to be a separate offense on each day during which it occurs. [*N. J. S. A.* 5:12–123(a)]

Whether defendant's alleged conduct was so merged is contingent upon an interpretation of the above provision.

Prior to a resolution of the ultimate issue presented herein, this court must address and dispose of a preliminary matter. As stated in part I of this opinion, the indictment filed and entered against defendant alleges violations of two statutory provisions, *N. J. S. A.* 5:12–113 and *N. J. S. A.* 2A:85–5, counts 1 and 2 alleging violations of the former statute and counts 3 and 4 primarily alleging violations of the latter statute and alluding to the former solely for the purpose of establishing that the criminal attempts alleged in counts 3 and 4 would be violative of *N. J. S. A.* 5:12–113 if said attempts were pursued until completed winnings were achieved. Only the former statutory provision is included within the Casino Control Act.

This last fact makes the resolution of an already difficult issue even more problematic. Regardless of how it is to be interpreted, the language of *N. J. S. A.* 5:12–123(a) suggests that the provision is applicable to violations of the Casino Control Act only, and not to violations of *N. J. S. A.* 2A:85–5, the general attempt statute. If in the present case *N. J. S. A.* 5:12–123(a) is interpreted so as to merge into a single indictable offense only that conduct allegedly committed by defendant and violative of *N. J. S. A.* 5:12–113, and not that conduct violative of *N. J. S. A.* 2A:85–5, the application of the interpretation could work an anomalous result insofar as it would serve to merge all completed winnings violative of *N. J. S. A.* 5:12–113 into one indictable offense, while at the same time permitting attempts to win violative of *N. J. S. A.* 2A:85–5 to stand as separate indictable offenses. In order to avoid such a ludicrous result this court must rule that should *N. J. S. A.* 5:12–123 (a) be interpreted so as to merge certain conduct violative of the Casino Control Act into one offense, the interpretation should serve to merge all attempts allegedly committed by defendant into that same offense. This result would be particularly appropriate only because defendant's alleged attempts were in pursuit of acts violative of the Casino Control Act.

By way of introduction to an interpretation of *N. J. S. A.* 5:12-123(a), this court will first lay the groundwork upon which the parties base their respective contentions. *N. J. S. A.* 5:12-123(a) is modeled after a provision of the Nevada Gaming Control Act, also dealing with continuing offenses and providing as follows:

Continuing offenses: Every day of the violation of any of the provisions of NRS 465.010 to 465.050, inclusive, shall be deemed a separate offense. [*Nev. Rev. Stat.* § 465.060 (1977)].

One conspicuous difference between the Nevada statute and *N. J. S. A.* 5:12-123(a) is the inclusion within the former of the statutory sections to which the provision is applicable. The sections to which *Nev. Rev. Stat.* § 465.060 alludes deal with the conduct of unlicensed gambling games and the unlawful possession of gambling devices and equipment. *Nev. Rev. Stat.* § 465.060 does not refer to and therefore is probably inapplicable to *Nev. Rev. Stat.* § 465.070, a Nevada Gaming Control Act provision making criminal substantially the same conduct as is made criminal by *N. J. S. A.* 5:12-113, one of the provisions which defendant allegedly violated. In contrast, as can be easily observed by a review of the statutory language, *N. J. S. A.* 5:12-123(a) is applicable to all provisions of the Casino Control Act — not simply a select few. It is upon this dissimilarity that defendant bases his argument for dismissal. Defendant construes *Nev. Rev. Stat.* § 465.060 as statutorily defining a continuing offense under the Nevada Gaming Control Act; he argues that, under the pertinent law, a continuing offense is that conduct violative of any statutory section to which *Nev. Rev. Stat.* § 465.060 alludes. In addition, defendant emphasizes the lack of a specific statutory reference within the text of *N. J. S. A.* 5:12-123(a) and concludes that the only possible definition of a continuing offense under the Casino Control Act is, as *N. J. S. A.* 5:12-123(a) provides, "[a] violation of any of the provisions

of this act * * *." In accordance therewith, defendant argues that his alleged conduct, while violative of *N. J. S. A.* 5:12–113 and *N. J. S. A.* 2A:85–5 must be construed as a continuing offense, and furthermore, argues that since *N. J. S. A.* 5:12–123(a) clearly provides that separate offenses may only be charged when they are committed on separate days, the provision mandates that his alleged conduct must be deemed a single indictable offense for the reason that it occurred during the course of a single calendar day. Moreover, defendant contends that his proposed interpretation and application of the law is in agreement with and furtherance of legislative intendment. He argues that at the time the Casino Control Act was enacted the Legislature was aware that casino security forces would oversee, by electronic surveillance and otherwise, each and every ongoing game, and without fail could readily observe those not gaming in accordance with the rules and oust them from the casino premises forthwith. He claims that since the Legislature was aware of the powers and abilities of casino security forces, it foresaw that security forces could abuse said powers and abilities by permitting an individual not gaming in accordance with the rules to further pursue his illegal conduct, thereby causing him to suffer several convictions for cheating during a brief period of time and the imposition of severe sanctions for each separate conviction. In conclusion, defendant argues that the Legislature recognized the need to merge all conduct violative of the Casino Control Act and occurring during the course of a single calendar day into a single indictable offense to avoid any such abuse by casino security forces.

At the outset, the State responds by emphasizing the legislatively-declared public policy of the Casino Control Act insofar as it stresses a need for strict law-enforcement supervision of all aspects of the casino industry. See *N. J. S. A.* 5:12–1(b). The State then proceeds to an interpretation of *N. J. S. A.* 5:12–123(a). It concedes the dissimilarities between *Nev. Rev. Stat.* § 465.060 and *N. J.*

*S. A.* 5:12–123(a), but urges that in view of the title accorded it the latter provision must be construed as applicable to Casino Control Act violations of a continuing nature only, and not to any and all violations of the act. By reference to *Nev. Rev. Stat.* § 465.060 the State attempts to exemplify those violations which should be deemed continuing offenses and those which should not. Among those violations identified as continuing offenses are the conduct of unlicensed gambling games, violative of *N. J. S. A.* 5:12–112, and the unlawful possession of gambling devices and equipment, violative of *N. J. S. A.* 5:12–116. Among those violations not identified as continuing offenses are the four transactions, violative of *N. J. S. A.* 5:12–113, in which defendant allegedly engaged. The State claims that said transactions are unrelated to one another, each constituting a separate and distinct act of cheating and giving rise to a separate indictable offense. Finally, the State disputes defendant's contention that casino security forces are well able to detect acts of cheating as they occur and claims that security surveillance is considerably less perfect than defendant characterizes it to be.

■■ At this stage of the prosecution this Court cannot know the quality of casino security and will not speculate with respect to casino security's abuse of its powers and abilities to the detriment of alleged cheaters. Moreover, when interpreting a statutory provision this court is not authorized to render a construction based upon mere speculation of unexpressed legislative intention. *Lehmann v. Kanane,* 88 *N. J. Super.* 262, 265 (App. Div. 1965) ; *Bravand v. Necld,* 35 *N. J. Super.* 42, 52 (App. Div. 1955). Consequently, this court will not render a construction of *N. J. S. A.* 5:12–123(a) based upon either defendant's or the State's unconfirmed arguments regarding the Legislature's awareness of the abilities and proclivities of casino security forces. In addition, this court will not now render an opinion construing Nevada law, and while it is fully cognizant of the dissimilarity between *Nev. Rev. Stat.* § 465.060 and

*N. J. S. A.* 5:12–123(a), it must be cautious not to permit any such dissimilarity to obfuscate the meaning of the latter provision. *N. J. S. A.* 5:12–123(a) must be construed in accordance with the discernible intendment of the Legislature of this State, not that of Nevada, and to reiterate what this court has heretofore stated, such intent may be ascertained from the legislative history of the Casino Control Act, implied from the statutory language used or inferred on grounds of policy and reasonableness. Again, this court notes that it is herein interpreting a penal provision which should be subject to strict construction, resolving ambiguities in favor of defendant, but restates that interpretation should not serve to create ambiguity where none exists, nor should strict construction serve to promote an unreasonable conclusion.

 The legislative history of the Casino Control Act is of no aid in the interpretation of *N. J. S. A.* 5:12–123 (a). After an independent and reasonable analysis of the words comprising *N. J. S. A.* 5:12–123(a), this court must disagree with defendant's interpretation of that provision. While the statute is apparently applicable to every provision of the Casino Control Act, it does not provide that a violation of any provision of the act must be deemed a continuing offense. It does not provide that distinct violations of the act may only be separately charged when they occur on separate days. *N. J. S. A.* 5:12–123(a) literally provides that "[a] violation of any of the provisions of this act shall be deemed to be a separate offense on each day during which it occurs." Since the statute speaks in terms of a violation continuing over a period of time in excess of one day and is entitled "Continuing offenses," impliedly the provision is applicable to offenses of a continuing nature only and unambiguously provides that each individual continuing violation of the act shall be deemed a separate indictable offense for each day during which the violation continues, thus having the effect of promoting strict law enforcement in lieu of the leniency suggested by defendant's argument.

So interpreted, whether *N. J. S. A.* 5:12–123(a) has any effect upon the indictment filed and entered against defendant is contingent upon whether defendant's alleged conduct is realistically comprised of four violations or only one continuing violation of the act. The appropriate unit of prosecution can best be ascertained by analysis of those provisions rendering defendant's alleged conduct criminal. *N. J. S. A.* 5:12–113 does not generally outlaw a cheating and swindling course of conduct; instead, it explicitly makes each winning by use of trick or sleight of hand performance a separate criminal offense. *N. J. S. A.* 2A:85–5 renders each attempt to commit an indictable offense a misdemeanor, and consequently each attempt to violate *N. J. S. A.* 5:12–113 must be deemed a separate indictable offense. Viewed in this sense, defendant's alleged two winnings by use of separate tricks and sleight of hand performances and his alleged two attempts to win by similarly illegal methods constitute four criminal violations distinct and unrelated to one another. Thus, the violations constitute four separate indictable offenses, not a single continuing offense, and accordingly *N. J. S. A.* 5:12–123(a) is of no applicable legal significance.

While this court conceives that the statutory interpretation it now adopts and applies is congruous with legislative intent ascertained by examination of statutory language, it also submits that its interpretation fosters a more reasonable result than the interpretation proposed by defendant. If defendant's suggested interpretation were adopted, defendant himself could be indicted for only one offense; however, if a hypothetical second individual engaged in precisely the same conduct in which defendant allegedly engaged, but committed two violations prior to midnight and two thereafter, that individual could be indicted for two separate offenses. By the same token, if a hypothetical third individual engaged in the single criminal act with which defendant is charged in the first count of his indictment, but commenced such conduct just prior to midnight and terminated it shortly

thereafter, he could be charged with two separate offenses. The ensuing variance is nonsensical.

For all of the above reasons, defendant's motion for dismissal of three of four counts of the indictment filed and entered against him is denied.